[Crim. No. 5898. In Bank. Sept. 21, 1956.]

THE PEOPLE, Respondent, v. ROBERT BURKE, Appellant.

Cletus J. Hanifin for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendant appeals from a judgment of conviction of violation of section 11500 of the Health and Safety Code by possession of marijuana. He contends that the judgment should be reversed because evidence which he asserts was illegally obtained was admitted over his objection.

The People do not appeal, but they ask reversal of the judgment for the purpose of having defendant's sentence increased. They contend that the trial court erred in ordering that the charge of a prior conviction of violation of section 11500 of the Health and Safety Code, a misdemeanor, which was alleged in the information and admitted by defendant, be "stricken [in effect, set aside or dismissed] in the interest of justice," and in sentencing defendant to the county jail. It is the position of the People that section 11712 of the Health and Safety Code (hereinafter quoted), which provides the punishment for violation of section 11500, requires that one who admits a prior conviction "of any offense described in this division [div. 10, Health & Saf. Code]" be sentenced to state prison. Specifically, they request "that the judgment be reversed and the case remanded with directions to enter judgment in accordance with [the People's construction of] . . . Section 11712."

We have concluded that the arguments of both parties are without merit.

### Claimed Illegal Search and Seizure

Defendant was tried by the court without a jury. The following facts appear from the testimony of John Storer, a narcotic inspector: "At approximately 11 :00 o'clock p.m." on March 28, 1955, Inspector Storer and three other officers, without warrant, went to defendant's apartment "To make a narcotic investigation." Also "at approximately 11 :00 o'clock p.m." on that date Storer arrested defendant. When the arrest took place in relation to the other events herein described does not appear from the record; according to defendant's opening brief it took place following the discovery of the narcotics hereinafter described.

The officers had "prior information that narcotics were used on those premises." The source of this prior information does not appear.

The officers knocked and "defendant came to the door and opened it a small distance and asked who was there, and Inspector Hollingsworth stated, 'We are officers. We would like to talk to you.' The defendant stepped back and said, 'Just a moment.' He opened the door, turned on the light, and we walked into the room. I then asked him if his name was Robert Burke and he said it was." Defendant did not state that the officers could enter the apartment "but his implication was plain. . . . Officer Hall asked him if he had ever been arrested for narcotics, and the defendant said . . . he had been arrested in 1950. Officer Hall then asked him, 'Do you have any narcotics here at the present time?' And the defendant said no. Officer Hall then said, 'You don't mind then if we search your apartment do you?' And the defendant said, 'No, go ahead.' "

In their ensuing search of defendant's apartment the officers found leafy marijuana and partially smoked marijuana cigarettes. Defendant freely admitted to the officers that the material was marijuana, that he had purchased it a week before, and that he had smoked some of it.

The marijuana was admitted in evidence over defendant's objection that it was obtained in violation of the exclusionary rule enunciated in *People v. Cahan* (1955), 44 Cal.2d 434 [282 P.2d 905]. The trial court in admitting the evidence declared: "There was certainly no need for a search warrant here, because the defendant, according to the testimony of this witness, consented to the search, and the officers had a reasonable ground to believe a crime was committed there."

It is defendant's position that there was no showing of reasonable cause to justify the arrest without warrant, and thereby to justify the search without search warrant as incident to a lawful arrest, since Inspector Storer testified merely that the officers had "prior information that narcotics were used on those premises," without disclosing the source of such information. (See *Willson v. Superior Court* (1956), 46 Cal. 2d 291, 294 [294 P.2d 36]; *People v. Boyles* (1955), 45 Cal.2d 652, 656 [290 P.2d 535] [since the court must determine whether the arresting officer acted upon reasonable cause, the officers must testify to the information upon which they acted].)

It was not necessary here, however, for the People to show that the search and seizure were reasonable as incident to a proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained. It was not unreasonable for the officers, without any show of force or coercion, to call upon the suspected defendant at his home, or to ask him questions, or to accept defendant's statement, "No, go ahead," in answer to the inquiry, "You don't mind then if we search your apartment do you?" Under the circumstances here, as under those in *People* v. *Michael* (1955), 45 Cal.2d 751, 754 [290 P.2d 852], a holding that as a matter of law defendant acted because of an unlawful assertion of authority by the officers would be unjustified. (See also *People* v. *Martin* (1955), 45 Cal.2d 755, 761 [290 P.2d 855].)

Defendant relies upon *Amos* v. *United States* (1921), 255 U.S. 313 [41 S.Ct. 266, 65 L.Ed. 654], and *Johnson* v. *United States* (1948), 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436]. The officers here did not come to defendant's home, as it was determined that they came in the Amos case (p. 317 of 255 U.S.), "demanding admission to make search of it under Government authority." And as was said in *People* v. *Michael* (1955), *supra,* page 753 of 45 Cal.2d, concerning the Johnson case and other cases, "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances. Since the cases that have determined this question under varying factual circumstances are difficult if not impossible to reconcile [citations], and may reflect imperfectly the factual situations before the courts that decided them, they point to no compelling solution in the present case." We conclude that defendant has shown no ground for reversal of the judgment.

*The People's Request for Reversal Based on the Trial Court's Claimed Violation of Section 11712 of the Health and Safety Code*

Section 11712 of the Health and Safety Code (as amended 1953) provides: "Any person convicted under this division [div. 10, which includes § 11500] for having in possession any narcotic . . . *shall be punished by imprisonment in the county*

*jail* for not more than one year, *or in the state prison* for not more than 10 years.

"If such a person has been previously convicted of any offense described in this division . . . the previous conviction *shall be charged in the indictment or information* and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he *shall be imprisoned in the state prison* for not less than two years nor more than 20 years." (Italics added.)

The information alleged and on arraignment for plea defendant admitted a prior conviction of "Violation of Section 11500, Health and Safety Code . . ., a misdemeanor." When defendant came before the court for sentence his counsel requested that upon the showing made "the Court in this particular case strike the prior for the purposes of sentencing"; the prosecuting attorney did not oppose this request[1]; and the court ordered that "the [charge of] prior conviction [is] stricken in the interest of justice" and sentenced defendant to the county jail.

The procedure of "striking," or setting aside or dismissing, a charge of a prior conviction (or any of multiple counts or allegations of an indictment or information) at the time of sentence is not expressly provided for by statute but it is commonly used in trial courts, not only where the prior conviction has not been legally established, but also where the fact of the conviction has been shown but the trial court has concluded that "in the interest of justice" defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of that fact.

---

[1] The following colloquy took place with reference to the striking of the prior conviction:

"Mr. KARCH [defendant's counsel]: . . . [I]n the past there have been cases where a prior has been struck just for the purpose of sentencing. I humbly request that the Court . . . strike the prior for the purposes of sentencing. . . .

"THE COURT: Mr. Crail [deputy district attorney], the Court has jurisdiction in this case to send the man to the County Jail, does he not?

"Mr. CRAIL: Not with a prior narcotic.

"THE COURT: It's possession and not sale.

"Mr. CRAIL: That doesn't make any difference.

"THE COURT: Do you have that Section there? There's been some amendment on it.

"Mr. KARCH: If the Court please, that is what counsel had in mind when he requested——

"THE COURT: Yes, in reference to the striking of the prior. I wasn't quite sure. In the interest of justice, I am going to strike the prior."

(See, recognizing procedure of dismissing charges of prior conviction, *In re Bartges* (1955), 44 Cal.2d 241, 244-245 [282 P.2d 47] ; *People* v. *Coyle* (1948), 88 Cal.App.2d 967, 973 [200 P.2d 546] ; *People* v. *Ysabel* (1938) 28 Cal.App.2d 259, 260 [82 P.2d 476] ; *People* v. *Chadwick* (1906), 4 Cal.App. 63, 74 [87 P. 384, 389].)

■ The power to strike or dismiss the proceeding as to a prior conviction is within the power referred to in section 1385 of the Penal Code, which provides that ''The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. . . .'' The authority to dismiss the whole includes, of course, the power to dismiss or ''strike out'' a part. (*Cf. People* v. *Superior Court* (1927), 202 Cal. 165, 173 [259 P. 943].) ■ The striking or dismissal of a charge of prior conviction (regardless of whether it has or has not been admitted or established by evidence) is not the equivalent of a determination that defendant did not in fact suffer the conviction (see *People* v. *Simpson* (1944), 66 Cal.App.2d 319, 329 [152 P.2d 339] ; *People* v. *Horowitz* (1933), 131 Cal.App.Supp. 791, 794 [19 P.2d 874]) ; such judicial action is taken, in the words of defendant's counsel, ''for the purpose of sentencing'' only and ''any dismissal of charges of prior convictions . . . does not wipe out such prior convictions or prevent them from being considered in connection with later convictions'' (*People* v. *Coyle* (1948), *supra,* 88 Cal.App.2d 967, 973-974).

■ The People argue that by providing in section 11712 of the Health and Safety Code that if a prior conviction, whether of misdemeanor or felony, ''is admitted by the defendant, he *shall* be imprisoned in the state prison'' (italics added) the Legislature intended to take from the court the power to dismiss or strike a charge of prior conviction if the defendant admits the charge. According to the People, the trial court was required to sentence defendant to state prison and the judgment should be reversed for the purpose of directing it to do so.

Section 11712 is based upon section 7 of the former State Narcotics Act (Stats. 1929, ch. 216, § 7, as am. Stats. 1935, ch. 813, § 5c). Section 7 provided in material part that a person convicted of illegal possession of drugs ''shall upon conviction be punished by imprisonment in the county jail or in the State prison for not more than six years; provided, however, that any person convicted [of such possession] . . .

shall be imprisoned in the State prison for not less than six months nor more than ten years if such person has been previously convicted of a *felony . . .*" (Italics added.) The People rely upon *People* v. *Rose* (1938), 26 Cal.App.2d 513, 518 [79 P.2d 737], where the appellate court (not in connection with the problem now under discussion) said that a state prison sentence for one previously convicted of felony was "mandatory" and that "in determining the amount or nature of the penalty to be inflicted, the Legislature *may require the courts* to take into consideration the persistence of the defendant in his criminal course." (Italics added by the People.) In the Rose case, however, the trial court "found for the prosecution on the issue of the prior conviction" (p. 515 of 26 Cal.App.2d). That case (and also *In re Shull* (1944), 23 Cal.2d 745, 749 [146 P.2d 417], and *In re Basuino* (1943), 22 Cal.2d 247, 250, 254 [138 P.2d 297]) concern records which disclose an express or implicit judicial determination against defendant of the factor (prior conviction in the Rose and Basuino cases, possession of a deadly weapon in the Shull case) from which increased punishment follows. The cited cases—and the statutes referred to—do not purport to divest the trial court (or to hold that the court constitutionally could be divested) of the power to control the proceedings before it insofar as the essentials of the judicial process are concerned; i.e., to find the defendant guilty or not guilty of any offense charged, or of a lesser included offense, or to dismiss the action *in toto* or to strike or dismiss as to any or all of multiple counts or charges of prior conviction. The statutes in question do validly—and in respect to constitutionally vested judicial power they neither purport to nor validly could do more than—prescribe the sentence which must be imposed upon the appropriate adjudication of guilt of the substantive crime and judicial determination of the factor which results in increased punishment. Such adjudication and judicial determination are inherently and essentially the province of the court even as the punishment which may or must follow the offense adjudicated, either with or without a punishment augmentation factor, is essentially for the Legislature except as it may vest an area of discretion in the court or administrative body. (See *People* v. *Gowasky* (1927), 244 N.Y. 451 [155 N.E. 737, 749, 58 A.L.R. 9, 17].)

The statute provides that defendant "shall be imprisoned in the state prison" whether the conviction is "found to be

true by the jury, upon a jury trial, or . . . found to be true by the court, upon a court trial, or is admitted by the defendant'' (Health & Saf. Code, § 11712). The People concede that ''the court has the power to strike its own findings''; but they assert that ''striking a prior conviction 'in the interest of justice' . . . constitutes error where the prior conviction was not a finding of the court.'' Whether such action constitutes error must be resolved in any particular case upon the record in that case. The admission, conceivably, could have been inadvertent, mistaken, or deliberately false; it is, at most, evidence which must be considered in the judicial process.

■ In the trial court the People did not object to the striking of the charge of prior conviction or advance the construction of section 11712 which they now urge. Rather, the conduct of the prosecuting attorney in remaining silent (as to that aspect of the requested action) when the trial court announced its intention to strike the charge (see footnote 1, *ante*, p. 50) amounted to assent to the ruling. (See *Exposita* v. *United Railroads* (1919), 42 Cal.App. 320, 323 [183 P. 576]; *People* v. *Ganger* (1950), 97 Cal.App.2d 11, 13 [217 P.2d 41]; *People* v. *Montgomery* (1940), 41 Cal.App.2d 574, 577 [107 P.2d 291]; *Cummings* v. *Cummings* (1929), 97 Cal.App. 144, 149 [275 P. 245].)

■ Furthermore, the People failed to appeal, although the order striking the charge of prior conviction was in its nature one of the orders specified as appealable either by paragraph 1 or by paragraph 6 of section 1238 of the Penal Code. That statute provides that the People may appeal ''1. From an order setting aside the indictment, information, or complaint; . . . 6. From an order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed.'' The trial court's action was in substance ''an order setting aside [a part of] the . . . information''; having set aside that part of the information charging a prior conviction the court properly made no finding on that issue. The People contend, implicitly or explicitly, not only that it was error to set aside the charge but that on the record the court was bound to let the information stand as filed, to accept the defendant's admission, and to make a finding and to enter sentence in accord therewith. If for purposes of this decision we accept the People's above stated contention then it would follow that the purpose and ultimate effect of the court's order were the same as those of ''an order modifying the

verdict or finding by reducing the degree of the offense or the punishment imposed." Regardless of whether the action of the trial court be regarded as "an order setting aside [a part of the] . . . information" or as "an order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed," it would appear that the People, if they were successfully to attack such action, must not only not have assented to it but must have taken an appeal. The failure of the People to appeal, like their silence when the dismissal order was made, indicates acquiescence in the order and the sentence which followed. (See *American Enterprise, Inc.* v. *Van Winkle* (1952), 39 Cal.2d 210, 221 [246 P.2d 935].)

The People argue that their failure to appeal is immaterial because of the provision of section 1252 of the Penal Code that "On an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General." But the "statute here involved was intended to give the People the right, on an appeal by the defendant, *when a judgment of conviction is reversed, to raise points that might be involved on a retrial.* The statute was not designed to give the People a right in the nature of an appeal. The right of appeal is governed by other sections of the code." (Italics added.) (*People* v. *Zelver* (1955), 135 Cal.App.2d 226, 236-237 [287 P.2d 183].)

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied October 17, 1956.